**MERRITT et al. v. GRAY et al.　(No. 1642.)**

(Court of Civil Appeals. of Texas. El Paso. May 1, 1924. Rehearing Denied May 29, 1924.)

**1. Mines and minerals ⬅️109—Petition for breach of oil well drilling contract held good as against demurrer.**

A petition for breach of an oil well drilling contract, providing that plaintiffs were to furnish a derrick, and defendants were to drill the well and assign one-sixteenth interest in the production to pay plaintiffs for the derrick, *held* good as against demurrer.

**2. Mines and minerals ⬅️109—Well drilling contract, not specifying depth, construed with reference to depth of wells in that field.**

A well drilling contract, ambiguous in that it fails to specify the depth for drilling, must be construed to contemplate such depth as oil is found in that field.

**3. Mines and minerals ⬅️109—Measure of damages for breach of oil well drilling contract stated.**

The measure of damages for the breach of an oil well drilling contract is the amount expended thereon, less the value of the equipment furnished under the contract and the interest in the oil and gas to be produced.

**4. Attachment ⬅️91 — Failure of notary to place title after name signed to affidavit not sufficient to quash writ.**

Failure of notary to place "notary public" after his name signed to the affidavit is not sufficient to quash writ of attachment.

Error from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by C. F. Gray and another against C. F. Merritt and another. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

J. L. Zumwalt, of Dallas, and R. R. Mizell, of Eastland, for plaintiffs in error.

Grisham Bros., of Eastland, for defendants in error.

HARPER, C. J. This is an appeal from a judgment for $3,000.

### Statement of the Case.

On the 6th day of May, 1922, the parties executed the following contract (C. F. Merritt and J. W. Jewell, parties of the first part, and J. E. Spencer and C. F. Gray, second part):

First. Parties of the first part agree to

drill an oil well on five acres of land, described, agree to pay all expenses of drilling said well, and to furnish all tools, pipe, etc., necessary for the drilling of same.

Second. Parties of the second part to furnish all of the material and labor necessary for the erection of a standard derrick to be located upon said five acres, * * * and in consideration of their furnishing said material and building said derrick they shall be entitled to a one-sixteenth interest in said well or to receive one-sixteenth of the gross production thereof, but are to be of no further expense * * * except operation after production.

Third. First parties to furnish each 30 days itemized statement of expenses.

Fourth. In case the well drilled shall be a dry hole, then the derrick erected shall revert to Spencer and Gray, and shall have the right to remove it.

The fifth fixes the rights of the parties in case of a producing well. Next:

"I, C. F. Merritt, do by these presents grant, bargain, sell and convey, assign and deliver to J. E. Spencer and C. F. Gray, the following, her undivided one-sixteenth working interest in and to all of the oil and gas * * * that may be produced from the following described land: (Then follows the description). This assignment is made for and in consideration of the sum of $3,000.00, paid by said Spencer & Gray in the following manner they agree to furnish all the material necessary for the erection of an oil derrick to be situated on said land, completed in a workmanlike manner and ready for operations. To have and to hold," etc.

Gray and Spencer filed this suit, and for cause of action alleged: That defendants owned the five-acre tract of land, and, being desirous of developing it for oil and gas, entered into negotiations with plaintiffs, and they agreed to furnish a derrick of an estimated value of $3,000, and defendants agreed to drill an oil well on the land, and further agreed to assign one-sixteenth interest in production of the estimated value of $3,000 to pay plaintiffs for the derrick. That the negotiations were reduced to writing, a copy of which is attached. That it was the duty of defendants under the law to drill a well for oil and gas with due diligence to the oil-producing sands, and in case of dry hole the derrick was to revert to plaintiff. Then they recite the assignment copied above. They then allege the construction of the derrick of the value of $3,-000.

Sixth:

"The defendants did not drill a well for oil and gas as they agreed to, but wholly breached and failed and refused to perform their said contract and to drill an oil and gas well as by the terms of said contract provided, and they wholly failed and refused to drill said well to a depth wherein it might be determined under the terms of said contract that same was a dry hole as contemplated by said contract, but the said defendants, well knowing that at the time of the making of the contracts in question, long prior thereto and since that the oil producing sands were more than 2,400 feet, the said defendants drilled a hole to a depth of less than 1,000 feet, and then and there discontinued their operations about September 1, 1922, and wholly abandoned said proposition, and have since failed and refused, and still fail and refuse, to carry out said contract and to plaintiff's great damage in the sum of the value of their investment, to wit, $3,000."

Seventh:

"That by reason of the breach of the contract as hereinabove set forth the purported assignment as contained in Exhibit B above referred to became wholly worthless, and the interest therein conveyed or assigned was rendered valueless, and by reason of the said breach as hereinabove set forth plaintiffs have received nothing of value for their said derrick and their said services in constructing same, but the consideration for their said services and property and derrick as aforesaid has wholly failed."

The prayer is for $3,000 damages.

At the time of filing this suit a writ of attachment was secured and levied upon the property of defendants.

The defendants pleaded general demurrer; that the petition alleged no facts which would permit a recovery for more than nominal damages, and special matters of defense; filed motion to quash the writ of attachment, and set up cross-action for damages for wrongful issuance and levy.

[1, 2] We have concluded that plaintiffs' petition states a cause of action when considered together with the contract and assignment of the one-sixteenth working interest in the oil and gas produced. It is not subject to the criticism that it is an attempt to engraft a contemporaneous parol agreement upon a written contract. The contract is ambiguous, in that there is no specified depth to which the well should be drilled, but, construing the instruments together, it is clearly apparent that the parties intended to drill to such depth as oil is found in such field. For otherwise there would be no consideration to the plaintiffs for the amount of money expended in constructing the derrick. Ranger Cisco Oil Co. v. Consolidated Oil Co. (Tex. Civ. App.) 239 S. W. 648.

[3] By their petition plaintiffs fix the amount of damages sought to be recovered "in the sum of the value of their investment, $3,000." Thus it is not very clear from this statement just what plaintiffs' damages consist of, but we think sufficient to enable

them to prove their actual loss in absence of special exception. And we think the measure of damages under these contracts for breach would be the amount of money expended, less the value of the derrick and the interest in the oil and gas to be produced. Under the contract the derrick reverts to plaintiffs in case of a dry hole, and there is no provision whereby the plaintiffs forfeit to the defendants the one-sixteenth interest conveyed, and it is conveyed to them, "their heirs and assigns forever."

The court submitted the measure of damages as follows:

"Special issue No. 1:

"At the time of the execution of the assignment from the defendant Merritt to the plaintiffs, did said Merritt agree that the value of the derrick was and would be three thousand dollars? Answer 'Yes' or 'No.'

"Answer: 'Yes.'

"Special issue No. 2:

"What was the reasonable value of the derrick erected on the said lease premises at the time it was completed in the manner it was completed? Answer in dollars and cents.

"Answer: "$3,000."

Special issue No. 1 was objected to because it did not submit the proper measure of damages. This is well taken. The value of the derrick at the time it was constructed is not the true measure of damages under the pleading and evidence, but as stated above. Besides, there is no evidence in this record of any agreement as to the value of the derrick after it was constructed. There is testimony that prior to the execution of the contracts the plaintiffs offered to construct a derrick for $3,000, but the conveyance recites $3,000 consideration for the one-sixteenth interest to be paid by constructing the derrick. This is not to be construed to be an agreement that the derrick, after being built, would be of that value, but, if it should be, the plaintiffs still own it; therefore it is not a total loss.

In the present state of the record we cannot properly pass upon the points urged by appellants as to the refusal of the court to quash the writ of attachment, but the contention that this is a suit for an unliquidated demand for damages for breach of contract, and for that reason will not support the writ, may or may not be well taken, depending upon the pleadings and facts upon another trial. Patterson v. McMinn (Tex. Civ. App.) 152 S. W. 223.

[4] That the notary did not place notary public after his name signed to the affidavit would not be cause to quash the writ. Steinam v. Gahwiler (Tex. Civ. App.) 30 S. W. 472.

For the reason that the court did not submit the proper measure of damages to the jury, the cause is reversed and remanded.